**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **WESTROCK SERVICES, LLC,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | )   **Civil Action No.:** |
| **v.** | ) |
| | ) |
| **MARK J. ROBERTS,** | ) |
| | ) |
|     **Defendant.** | ) |

## COMPLAINT

Plaintiff WestRock Services, LLC ("WestRock") hereby files this Complaint seeking a declaratory judgment and injunctive relief against Defendant Mark J. Roberts, respectfully showing the Court as follows:

**THE PARTIES, VENUE, AND JURISDICTION**

1. WestRock Services, LLC is a Georgia limited liability company with its principal place of business located at 1000 Abernathy Road, N.E., Suite 125, Atlanta, Georgia 30328.

2. WestRock Services, LLC's only member is WRKCo, Inc., which is a Delaware corporation with its principal place of business located at 1000 Abernathy Road, N.E., Suite 125, Atlanta, Georgia 30328.

3. WestRock Services, LLC is a wholly owned subsidiary of WRKCo, Inc., which is a wholly owned subsidiary of WestRock Company, a publicly traded, multinational and multistate provider of paper and packaging solutions for the consumer and corrugated packaging markets (collectively "WestRock").

4. Defendant is a resident and citizen of the State of California and resides at 77099 Desi Drive, Indian Wells, California 92210.

5. By contract, WestRock Services, LLC and Defendant both consent to the personal jurisdiction of this Court. *See* Restrictive Covenant Agreement ("RCA"), attached hereto as **Exhibit 1**, ¶ 9.

6. By contract, WestRock Services, LLC and Defendant both agree that this Court is the proper venue for this action. *Id.*

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because WestRock Services, LLC and Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

8. This Court is empowered to render a declaratory judgment in this case pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

9. There is a substantial controversy and dispute between the parties with respect to the enforceability of the RCA. This dispute is an actual case or

controversy for purposes of the Federal Declaratory Judgment Act, and this Court is thus empowered under 28 U.S.C. § 2201 *et seq.* to render a declaratory judgment respecting the future rights of these parties.

## FACTUAL BASIS FOR COMPLAINT

10. WestRock is a multinational and multistate provider of paper and packaging solutions for the consumer and corrugated packaging markets paper and packaging solutions company.

11. Defendant worked for WestRock and/or its predecessor (MultiPackaging Solutions, also known as "MPS") from April 2009 until February 2022.

**Defendant's Duties as Senior Vice President of Sales**

12. Most recently, Defendant worked for WestRock as a Senior Vice President of Sales.

13. As a Senior Vice President of Sales, Defendant was responsible for managing a sales organization within WestRock that included customers throughout the continental United States, Brazil, Europe (excluding Russia), and Asia-Pacific (including Australia and New Zealand).

14. As a Senior Vice President of Sales, Defendant's duties included but were not limited to: (a) customarily and regularly soliciting customers and

prospective customers on behalf of WestRock; (2) customarily and regularly engaging in sales activity and obtaining orders or contracts for products and services provided by WestRock; and (3) managing a recognized sales enterprise within WestRock with two or more other employees and hiring and/or firing employees within that organization.

15. As a result of WestRock's investment of time, training, money, and trust in Defendant as a Senior Vice President of Sales, as well as Defendant's repeated exposure to WestRock's customers, Defendant gained a high level of reputation as WestRock's representative and a high level of influence and credibility with WestRock's customers and was intimately involved in the planning for and direction of the enterprise which he managed.

16. The value of the sales organization managed by Defendant to WestRock is over $100 million annually.

**WestRock's Sales Incentive Program**

17. In the final quarter of 2020, WestRock offered a program to incentivize certain key employees to help WestRock meet its goals (the "Program"). Such key employees included Defendant, who was employed as a Senior Vice President of Sales at that time.

18. The Program was optional, and unrelated to continued employment.

19. As part of the Program, Defendant was offered access to WestRock's trade secret and confidential information, a cash award of $25,000.00, and the opportunity to earn 3,670 shares of WestRock's common stock. *See* Defendant's Stock Grant Letter, attached hereto as **Exhibit 2**, at 1.

20. Defendant accepted WestRock's offer and executed the Stock Grant Letter on December 1, 2020. *Id.* at 6.

21. Pursuant to the Stock Grant Letter, Defendant's participation in the Program was conditioned, in part, on his execution of and agreement with the RCA by no later than November 30, 2020. *Id.* ¶ 6(c). Defendant, however, sought to have the RCA reviewed by counsel before execution and requested more time to review the RCA, which was granted by WestRock. Defendant did not execute the RCA until December 1, 2020. *See* Ex. 1 at 8. WestRock accepted Defendant's executed RCA and Defendant was permitted to participate in the Program.

22. As part of the Program, on October 19, 2020, WestRock paid Defendant the previously promised cash award of $25,000.00.

23. As part of the Program, on October 1, 2021, Defendant vested and was awarded 918 shares of WestRock's common stock, which was worth $47,595.61. *Id.*

**RCA Definitions**

24. The RCA defines several terms used therein. *See* Ex. 1.

25. Pursuant to the RCA, the "Business of the Company" means "all activities of the type engaged in by the Company during the two years immediately preceding [Defendant's] Termination Date, including without limitation of this purpose, providing paper and packaging solutions for consumer and corrugated packaging markets and partnering with customers to provide differentiated paper and packaging solutions, and any similar activities conducted, authorized, offered, provided or proposed to be conducted by the Company during the two years immediately preceding [Defendant's] Termination Date." *Id.* ¶ 1.1.

26. Pursuant to the RCA, the "Restricted Period" means "during [Defendant's] employment with the Company and for a period of one year following the Termination Date," which is the last date on which Defendant was employed by WestRock. *Id.* ¶¶ 1.7, 1.8.

27. Pursuant to the RCA, "Prohibited Activities" include "activities related to the Business of the Company that involve executive management, executive leadership, business strategies, business development, mergers and acquisitions processes, marketing and sales (including, but not limited to, the Company's go-to-market strategy and enterprise solutions initiatives), manufacturing processes, legal,

environmental, health and safety processes, supply chain management, capital spending, process and continuous improvement methodologies and other activities of the type conducted, provided or offered by [Defendant] within two years of [Defendant's] Termination Date." *Id.* ¶ 1.6.

28.     Pursuant to the RCA, "Territory" means "the geographic area in which, during the two years immediately preceding [Defendant's] Termination Date, [Defendant] (a) engaged in, supervised or assisted in, collaborated with or shared or received information regarding any Business of the Company or (b) had Material Contact with the Company's customers or Potential Customers during [Defendant's] employment with the Company or for which [Defendant] had responsibilities on behalf of [WestRock] within two years of [Defendant's] Termination Date." *Id.* ¶ 1.9.

29.     As of the date the RCA was executed, Defendant's "Territory" included the jurisdictions identified in Exhibit A to the RCA; specifically, the continental United States, Brazil, Europe (excluding Russia), and Asia-Pacific (including Australia and New Zealand). *Id.*

30.     Pursuant to the RCA, "Material Contact" shall exist between Defendant and "each customer or Potential Customer . . . as a result of any of the following: (a) contact between [Defendant] and any such customer or Potential Customer in

connection with dealings between the Company and such customer or Potential Customer; (b) deadlines between the Company and any such customer or Potential Customer that were coordinated or supervised by Employee; (c) [Defendant] receiving or having access to Confidential Information regarding any such customer or Potential Customer, including any account information; or (d) [Defendant] receiving any compensation, commissions or earning as a result of any of the Company's sale of products or services to any such customer or Potential Customer." *Id.* ¶ 1.4.

31. Pursuant to the RCA, "Potential Customer" means "a person or entity that, during the two years immediately preceding [Defendant's] Termination Date . . . (a) has evidenced an interest in purchasing or intent to purchase goods or services from the Company or otherwise contracting with the Company, (b) has been actively solicited by the Company or (c) has been the subject of specific planning regarding the solicitation of business by the Company." *Id.* ¶ 1.5.

**The RCA's Relevant Covenants**

32. The RCA also contains several restrictive covenants.

33. Pursuant to the RCA, Defendant agreed that "during the Restricted Period," he would not "directly or indirectly, whether through [himself] or through another person or entity, perform the Prohibited Activities in the Territory, which by

way of clarification, includes, without limitation, performing Prohibited Activities related to planning, preparing or assisting others to engage in the Business of the Company" (the "Non-Competition Covenant"). *Id.* ¶ 4.

34. Pursuant to the RCA, Defendant agreed that "during the Restricted Period," he would not "directly or indirectly, solicit or attempt to solicit, contact or call upon, or accept business from, any customer or Potential Customer of the Company, with whom [he] had Material Contact during the last 24 months of [his] employment with the Company, for purposes of providing products or services that are competitive with those provided by the Company" (the "Non-Solicitation of Customers Covenant"). *Id.* ¶ 5.

**Defendant Resigns and Threatens to Breach the RCA**

35. In January 2022, Defendant resigned his employment with WestRock.

36. Defendant's last day of employment with WestRock was February 15, 2022.

37. On April 11, 2022, through counsel, Defendant sent WestRock a letter regarding the RCA; specifically, the Non-Competition and Non-Solicitation of Customers Covenants. *See* April 11, 2022, Letter from D. Handman, Esq. to V. Lostetter, attached hereto as **Exhibit 3**.

38. In this letter, Defendant expressed his belief that the choice of forum and choice of law provisions of the RCA, which identify this Court as the proper venue and Georgia law as applicable, are unenforceable. *Id.* Instead, Defendant contends California is the proper venue for any action between the parties regarding the RCA and that California law should apply to such a dispute. *Id.*

39. In this letter, Defendant also expressed his belief that the Non-Competition and Non-Solicitation of Customer Covenants in the RCA are unenforceable under California law. *Id.*

40. In this letter, Defendant also disclosed that he is preparing to "reengage in professional pursuits" (*i.e.,* become employed) and, because of those professional pursuits, sought WestRock's assurance that it would not enforce the Non-Competition and Non-Solicitation of Customer Covenants in the RCA against him. *Id.*

41. WestRock believes the RCA's choice of forum and choice of law provisions are enforceable such that this Court is the proper venue for any action between the parties regarding the RCA and Georgia law should apply to such a dispute.

42. WestRock further believes that the Non-Competition and Non-Solicitation of Customer Covenants in the RCA are enforceable under Georgia law.

43. As a result of the letter received by WestRock from Defendant's counsel, there is an actual, substantial, and immediate controversy between the parties that requires this Court to adjudicate the enforceability of: (1) the RCA's forum selection clause; (2) the RCA's choice of law provision; and (3) and the Non-Competition and Non-Solicitation of Customers Covenants.

44. WestRock is suffering, and will continue to suffer, irreparable harm in the form of interference with its right to enforce its RCA, the possibility of Defendant initiating litigation against it in an improper forum, and the loss of the benefits of its bargain with Defendant contained in the RCA.

45. WestRock relied on Defendant's agreement to the RCA, through which he had access to WestRock's Trade Secrets, confidential data, and customer interactions.

46. If Defendant were able to freely compete with WestRock and solicit WestRock's customers, he would have an unfair competitive advantage and threaten WestRock's business and business relationships.

47. If Defendant initiates litigation against WestRock in California, WestRock will suffer damages in excess of $75,000.00 to defend against such an action and seek a transfer to this proper venue.

## COUNT ONE: DECLARATORY JUDGMENT

48. WestRock hereby reasserts and incorporates by reference all the foregoing factual allegations.

49. WestRock seeks a declaratory judgment from this Court stating that: (a) the RCA's forum selection clause specifying Georgia courts as the proper venue for this dispute is enforceable; (b) the RCA's choice of law provision specifying Georgia law as governing this dispute is enforceable; and (c) the Non-Competition and Non-Solicitation of Customer Covenants in the RCA are enforceable under Georgia law.

50. The RCA's forum selection clause is reasonable and enforceable because: (1) it was neither induced by fraud nor overreaching; (2) Defendant will not be effectively deprived of his day in court because of any inconvenience or unfairness resulting from litigating in Georgia; and (3) enforcement of the forum selection clause does not contravene a strong public policy.

51. The RCA's choice of law provision is reasonable and enforceable because: (1) there was no manifest disparity in the bargaining position between WestRock and Defendant; (2) it does not violate public policy; and was not a condition of his employment.

52. The Non-Competition Covenant in the RCA is enforceable against Defendant because, as the Vice President of Sales, he satisfies the requirements of O.C.G.A. § 13-8-53(a)(1-4).

53. The Non-Competition Covenant in the RCA is enforceable against Defendant because it is reasonable in the types of activities prohibited, the territorial scope, and duration.

54. The Non-Solicitation of Customers Covenant in the RCA is enforceable against Defendant because it is reasonable in scope and duration.

55. To the extent either the Non-Competition or Non-Solicitation of Customer Covenants in the RCA are deemed overbroad by this Court, the RCA and Georgia law empower this Court to construe the covenants to comport with the reasonable intent and expectations of the parties and modify the covenants to reasonably protect WestRock's legitimate business interests. *See* O.C.G.A. § 13-8-54 (a)-(b); RCA ¶ 7.

56. There is an actual, substantial, and immediate controversy between the parties as to the enforceability of: (1) the RCA's forum selection clause; (2) the RCA's choice of law provision; and (3) and the Non-Competition and Non-Solicitation of Customers Covenants.

57. The parties have adverse legal interests as to this controversy. Specifically, WestRock seeks to enforce the RCA's forum selection clause and choice of law provision and the Non-Competition and Non-Solicitation of Customers Covenants. Defendant seeks to invalidate these contractual provisions.

## COUNT TWO: INJUNCTIVE RELIEF

58. WestRock hereby reasserts and incorporates by reference all the foregoing factual allegations.

59. WestRock is suffering, and will continue to suffer, irreparable harm in the form of interference with its right to enforce its RCA, the possibility of Defendant initiating litigation against it in an improper forum, and the loss of the benefits of its bargain with Defendant contained in the RCA.

60. WestRock is without an adequate remedy at law and will suffer irreparable harm if Defendant is not prevented from interfering with its rights under the RCA, initiating litigation against it in an improper forum, and unlawfully competing against WestRock by breaching the Non-Competition Covenant and/or Non-Solicitation of Customers Covenant.

61. There is a substantial likelihood that WestRock will prevail on the merits of its claims in this action.

62. The hardships on WestRock if injunctive relief is denied heavily outweigh any potential irreparable harm to Defendant from being restrained from interfering with and/or breaching the RCA.

63. The public interest is served by enjoining Defendant from interfering with and/or breaching the RCA.

64. WestRock respectfully requests the Court issue temporary, preliminary, and permanent injunctive relief as follows:

   a. Enjoining Defendant from initiating litigation against WestRock in any other forum regarding the RCA;

   b. Enjoining Defendant from breaching the Non-Competition Covenant in the RCA; and

   c. Enjoining Defendant from breaching the Non-Solicitation of Customers Covenant in the RCA.

## PRAYER FOR RELIEF

WHEREFORE, WestRock respectfully requests:

a. a Declaration that the forum selection clause of the RCA is enforceable;

b. a Declaration that the choice of law clause of the RCA is enforceable;

c. all necessary and appropriate injunctive relief to prevent WestRock from being harmed by Defendant's attempt(s) to initiate litigation against it

regarding the RCA in an improper forum and/or breaching the Non-Competition and Non-Solicitation of Customers Covenants;

d. all fees and costs incurred herein, including reasonable attorneys' fees; and

e. for such other and further relief as this Court may deem proper.

Respectfully submitted this 19th day of April 2022.

                        **JACKSON LEWIS P.C.**

                        */s/ Adriana R. Midence*
                        Adriana R. Midence
                        Georgia Bar No. 142298
                        adriana.midence@jacksonlewis.com
                        Claire E. Fyvolent
                        Georgia Bar No. 608835
                        claire.fyvolent@jacksonlewis.com

                        171 17th Street, N.W., Suite 1200
                        Atlanta, Georgia 30363
                        T: (404) 525-8200
                        F: (404) 525-1173

                        **COUNSEL FOR PLAINTIFF**